IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KARL RAINEY                                   :
                                              :              CIVIL ACTION
        v.                                    :
                                              :              NO. 05-1334
DAVID DIGUGLIELMO, et al.                     :

## MEMORANDUM

Presently before the Court is Karl Rainey's counseled Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. On January 12, 2006, Magistrate Judge Peter B. Scuderi filed a Report and Recommendation ("R&R") recommending that we deny the Petition in its entirety. On April 5, 2006, Petitioner filed timely Objections to the R&R. For the reasons that follow, we overrule Petitioner's Objections, adopt the R&R as amplified by this Memorandum, and deny the Petition in its entirety.

I.      BACKGROUND

On August 10, 1995, following a jury trial before the Honorable Paul Ribner of the Philadelphia County Court of Common Pleas, Petitioner was found guilty of the first degree murder of Kenneth White, aggravated assault upon Ervin Boyd, and carrying a firearm on the public street. The Pennsylvania Superior Court ("Superior Court") set forth the relevant facts as follows:

> [Petitioner] and the Decedent Kenneth White had several verbal confrontations prior to the night of the murder. On the night in question, [Petitioner] was leaving a bar when Decedent and his friend Ervin Boyd were entering the bar. [Petitioner] and Decedent began to argue as [Petitioner] walked to his car. Boyd followed along. Upon arriving at his car, [Petitioner] pulled a gun from his jacket and shot Decedent several times. [Petitioner] then shot Boyd who hid behind a parked car. [Petitioner] cleared a jam in his gun, returned to Decedent's body and fired three more shots into Decedent's back. Then, [Petitioner] found Boyd and shot him three more times. As [Petitioner] fled from the scene, he ran over Boyd and dragged him one block from the scene. Boyd survived and Decedent bled to death.

No weapon was found on or near Decedent's body.[1]

Commonwealth v. Rainey, 698 A.2d 110 (Pa. Super. Ct. 1997) (table); No. 4275 PHL 1995, slip op. at 2-3 (Pa. Super. Ct. Jan. 16, 1997).

Petitioner was sentenced to life imprisonment for the murder and received concurrent sentences of 5-10 years on the assault charge and 1-2 years on the firearms violation. Petitioner appealed to the Superior Court, which affirmed his judgment of conviction on January 16, 1997. Id. at 4. Petitioner sought discretionary review by the Pennsylvania Supreme Court, but the Supreme Court denied allowance of appeal on November 3, 1997. Commonwealth v. Rainey, 704 A.2d 637 (Pa. 1997) (table).

On October 30, 1998, Petitioner filed a *pro se* petition for state collateral review pursuant to the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. Con. Stat. Ann. § 9541. The PCRA court appointed counsel who, on June 8, 2000, filed an amended PCRA petition. The amended petition contended that Petitioner received ineffective assistance of counsel because, among other reasons: (1) trial counsel failed to call Petitioner's brother, Kurtis Rainey, as a witness; (2) trial counsel failed to object to the testimony of the Commonwealth's ballistics expert and failed to obtain a defense ballistics expert; and (3) appellate counsel failed to raise the issue of jury recantation. Commonwealth v. Rainey, No. 0710, slip op. at 2 (Phila. Ct. Com. Pl. Nov. 17, 2003). On June 4, 2002, after a hearing, the PCRA court dismissed the amended petition as being without merit. Id.

---

[1]The state court's factual findings are accepted as correct, absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e). Petitioner argues that the Commonwealth's own evidence at trial was that the Petitioner and the Decedent had only one confrontation prior to the night of the shooting, and that Petitioner attempted to peaceably leave the bar and proceed to his car, whereas the Decedent persisted in following Petitioner and haranguing him in a threatening manner. Such factual distinctions are not material to this Memorandum.

Petitioner appealed to the Superior Court, asserting his ineffective assistance of counsel claims and contending as well that the PCRA court improperly denied his request to retain the state-funded services of an independent expert ballistics examiner.  Commonwealth v. Rainey, 863 A.2d 1229 (Pa. Super. Ct. 2004) (table); No. 2861 EDA 2002, slip op. at 2 (Pa. Super Ct. Sept. 9, 2004).  On September 9, 2004, the Superior Court affirmed the PCRA court's decision, id., and on February 22, 2005, the Pennsylvania Supreme Court denied Petitioner's request for allowance of appeal.  Commonwealth v. Rainey, 868 A.2d 1199 (Pa. 2005) (table).

On March 25, 2005, Petitioner filed the instant Petition for Writ of Habeas Corpus, raising the claims that Petitioner had previously asserted before the PCRA court and before the Superior Court on appeal.  The Magistrate Judge issued a Report and Recommendation ("R&R") advising that the Petition be denied in its entirety because it fails on the merits.  Petitioner's Objections to the R&R present no new issues or arguments; Petitioner primarily contends that the Magistrate Judge failed to appreciate the extent to which evidence that there was a second gunman could have exonerated Petitioner and, as a consequence, incorrectly analyzed the claims presented in the instant Habeas Petition.

II.     STANDARD OF REVIEW

Where a habeas petition has been referred to a magistrate judge for an R&R, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. . . . [The court] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."  28 U.S.C. § 636(b).

The instant Petition was filed pursuant to 28 U.S.C. § 2254, which allows federal courts to grant habeas corpus relief to prisoners "in custody pursuant to the judgment of a State court only on

the ground that he is in custody in violation of the Constitution or laws or treaties of the United

States." 28 U.S.C.A. § 2254(a).  Since it was filed after April 24, 1996, this Petition is governed by

the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), P.L. 104-132, 110 Stat.

1214; see Lindh v. Murphy, 521 U.S. 320, 326-27 (1997).  Section 2254(d)(1), as amended by the

AEDPA, provides:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim-
>> (1) resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law,
>> as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented in
>> the State court proceeding.

28 U.S.C.A. § 2254(d)(1).  Under the AEDPA, a state court's legal determinations may only be

tested against "clearly established Federal law, as determined by the Supreme Court of the United

States."  See 28 U.S.C.A. § 2254(d)(1).  This phrase refers to the "holdings, as opposed to the dicta"

of the United States Supreme Court's decisions as of the time of the relevant state court decision.

Williams v. Taylor, 529 U.S. 362, 412 (2000).

To apply the AEDPA standards to pure questions of law or mixed questions of law and fact,

federal habeas courts initially must determine whether the state court decision regarding each claim

was contrary to clearly established Supreme Court precedent.  Werts v. Vaughn, 228 F.3d 178, 197

(3d Cir. 2000).  A state court decision may be contrary to clearly established federal law as

determined by the United States Supreme Court in two ways.  See Williams, 529 U.S. at 405.  First,

a state court decision is contrary to Supreme Court precedent where the court applies a rule that

contradicts the governing law set forth in United States Supreme Court cases.  Id.  Alternatively, a state court decision is contrary to Supreme Court precedent where the state court confronts a case with facts that are materially indistinguishable from a relevant United States Supreme Court precedent and arrives at an opposite result.  Id. at 406.  If relevant United States Supreme Court precedent requires an outcome contrary to that reached by the state court, the federal habeas court may grant relief at this juncture.  Matteo v. Superintendent S.C.I. Albion, 171 F.3d 877, 890 (3d Cir. 1999).

If the state court decision is not contrary to precedent, the court must evaluate whether the state court decision was based on an unreasonable application of Supreme Court precedent.  Id.  A state court decision can involve an "unreasonable application" of Supreme Court precedent if the state court identifies the correct governing legal rule but unreasonably applies it to the facts of the particular state prisoner's case.  Williams, 529 U.S. at 407.  To grant a writ of habeas corpus under the unreasonable application prong, the federal court must determine that the state court's application of clearly established federal law was objectively unreasonable.  Id. at 409; Werts, 228 F.3d at 197. A federal court cannot grant a writ of habeas corpus simply by concluding in its independent judgment that the state court applied clearly established federal law erroneously or incorrectly; mere disagreement with a state court's conclusions is insufficient to justify relief.  Williams, 529 U.S. at 411; Matteo, 171 F.3d at 891.  In determining whether the state court's application of the Supreme Court precedent is objectively unreasonable, habeas courts may consider the decisions of inferior federal courts.  Matteo, 171 F.3d at 890.

Section 2254 further mandates heightened deference to state court factual determinations by imposing a presumption of correctness.  28 U.S.C.A. § 2254(e)(1).  The presumption of correctness

is rebuttable only through clear and convincing evidence.  Id.  Clear and convincing evidence is

evidence that is "so clear, direct, weighty and convincing as to enable the jury to come to a clear

conviction, without hesitancy, of the truth of the precise facts in issue."  United States Fire Ins. Co.

v. Royal Ins. Co., 759 F.2d 306, 309 (3d Cir. 1985).

III.    DISCUSSION

    A.    Ineffective Assistance of Counsel

Petitioner accepts the standard of review the Superior Court identified as governing

ineffective assistance of counsel claims but argues that the Superior Court unreasonably applied it

to the facts of his case.  The Superior Court used the following standard in analyzing Petitioner's

claims of ineffective assistance of counsel in his PCRA petition:

> [t]o prevail on a claim that counsel was constitutionally ineffective,
> the [Petitioner] must overcome the presumption of competence by
> showing that: (1) the underlying claim is of arguable merit; (2) the
> particular course of conduct pursued by counsel did not have some
> reasonable basis designed to effectuate [Petitioner's] interests; and (3)
> but for counsel's ineffectiveness, there is a reasonable probability that
> the outcome of the challenged proceeding would have been different.
> A failure to satisfy any one prong of the test for ineffectiveness will
> require rejection of the claim.

Commonwealth v. Rainey, No. 2861 EDA 2002, slip op. at 3 (citing Commonwealth v. Wharton,

811 A.2d 978 (Pa. 2002)).  The Pennsylvania Supreme Court has determined that this standard is the

same as that set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668

(1984).  Young v. Vaughn, Civ. A. No. 00-3512, 2002 U.S. Dist. LEXIS 4094, at *18 (Mar. 6, 2002)

(citing Commonwealth v. Pierce, 527 A.2d 973, 975-76 (Pa. 1987)).  The United States Court of

Appeals for the Third Circuit has also examined this standard and has determined that its application

does not contradict the Supreme Court's holding in Strickland and, therefore, is not contrary to

established Supreme Court precedent.  Werts, 228 F.3d at 204.

In Strickland, the Supreme Court held that criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance, 466 U.S. at 687, and set forth a two-prong test for determining ineffective assistance of counsel.  A defendant first must show that counsel's performance was so deficient that it fell below an objective standard of reasonableness under prevailing professional norms.  Id. at 688.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  Id. at 687.  "In evaluating counsel's performance, [the court is] 'highly deferential' and 'indulge[s] a strong presumption' that, under the circumstances, counsel's challenged actions 'might be considered sound . . . strategy.'"  Buehl v. Vaughn, 166 F.3d 163, 169 (3d Cir. 1999) (quoting Strickland, 466 U.S. at 689).  "Because counsel is afforded a wide range within which to make decisions without fear of judicial second-guessing, [ ] it is 'only the rare claim of ineffectiveness of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance.'"  Id. (citing United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)).

If a defendant shows that counsel's performance was deficient, he then must show that the deficient performance prejudiced the defense.  Strickland, 466 U.S. at 687.  "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Id.  Defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."  Id. at 697.  "If it is easier

7

to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Id.

### 1.   Failure to present the testimony of Kurtis Rainey

In his first objection, Petitioner contends that his trial counsel's failure to present his brother Kurtis Rainey's testimony constitutes ineffective assistance under any reasonable application of Supreme Court precedent.  Petitioner maintains that his brother's testimony would have significantly supported his contention at trial that he acted in self defense in the death of Kenneth White.  Indeed, Petitioner does not dispute that he fired at least two shots from a .380 caliber pistol at White, but he insists that he fired the shots only upon the legitimate belief that White was reaching inside his coat for a gun.  (8/9/95 N.T. at 52-58, 95, 97-99.)  At Petitioner's trial, the medical examiner, Dr. Stephanie Mills, testified that the Decedent suffered eight gunshot wounds to the chest, the abdomen, and the back.  (8/8/95 N.T. at 113, 127.)  The Decedent's wounds were created by both .380 caliber and 9 millimeter caliber bullets.  (8/8/95 N.T. at 83-84.)  The Commonwealth put on evidence by a ballistics experts, Lieutenant Mark Stephan, who testified that 9 millimeter ammunition can be fired from a .380 caliber firearm.  (8/8/95 N.T. at 88-89, 103.)  The Commonwealth relied on that testimony to argue at trial that all of the shots to the Decedent originated with the Petitioner.  (8/9/95 N.T. at 111-12, 119-120.)  The Commonwealth further asserted that, since the Decedent was shot through the back, Petitioner could not possibly have been acting in self defense.  (8/9/95 N.T. at 106-07, 113-16, 119-120.)  Petitioner, in contrast, testified at trial that, although he was responsible for frontal wounds to the Decedent, having shot the Decedent in fear for his life, he was not responsible for the additional wounds to the Decedent's back.  (8/9/95 N.T. 58-61, 100-02).  Petitioner maintained that there was a second gunman — his friend, Kevin Williams — who was present at the

scene, armed with a 9 millimeter pistol, and who, without Petitioner's consent or prior agreement, fired the final, ultimately fatal, shots into the Decedent's back while the Decedent was already disabled.  (8/9/95 N.T. at 58-61, 78-79, 100-102.)  Petitioner argues that such a scenario militates in favor of self-defense and that corroborating testimony from his brother was critical to its believability.

Petitioner attached an affidavit from his brother to his PCRA petition, and Kurtis Rainey testified at Petitioner's PCRA hearing.  At the time of the hearing, Kurtis Rainey was an officer with the West Whiteland Township, Pennsylvania police department.  (6/21/2001 N.T. at 31, 34.)  In his affidavit and hearing testimony, Kurtis Rainey stated that on the day of the shooting, Petitioner and Williams visited him and related a version of what had happened that was consistent with Petitioner's trial testimony.  (Kurtis Rainey Aff. ¶ 3; 6/21/2001 N.T. at 32.)  In the process of describing the events of the early morning, Williams told Kurtis Rainey that "the motherfucker tried to get your brother. . . . Your brother shot them and then I finished it."  (Kurtis Rainey Aff. ¶ 4; 6/21/2001 N.T. at 32.)  Kurtis Rainey observed that Williams was carrying a silver-plated 9 millimeter pistol.  (Kurtis Rainey Aff. ¶ 4; 6/21/2001 N.T. at 33.)  Kurtis Rainey informed Petitioner's trial counsel of these facts, indicated a willingness to testify on Petitioner's behalf, and was present and available at trial.  (Kurtis Rainey Aff. ¶¶ 6-7; 6/21/2001 N.T. at 33.)

On post-conviction review, the Superior Court found under the equivalent of <u>Strickland</u>'s prejudice prong that Petitioner's trial counsel was not ineffective for failing to present Kurtis Rainey's testimony.  The Superior Court wrote that

> [i]n light of [Petitioner's] admission at trial that he intended to shoot the victims, and the evidence that the cause of death was the result of multiple gunshot wounds and not any one isolated wound, the

introduction of testimony by [Petitioner's] brother which referenced a second gunman would not have exonerated [Petitioner].  As such, [Petitioner's] accusation of ineffective assistance of counsel fails because the underlying argument is without merit."[2]

Commonwealth v. Rainey, No. 2861 EDA 2002, slip op. at 5.

Petitioner argues that this conclusion is unreasonable based on the evidence at trial. Petitioner maintains that his brother's testimony would have confirmed that he had not fabricated the existence of a second gunman with a 9 millimeter handgun, and that he did not have the intent to kill associated with shooting an incapacitated man through the back.  Petitioner contends that he had a credible claim of self-defense, based in part on the reputations of White and Boyd for carrying guns and shooting people (8/9/95 N.T. at 46-47, 51-53), and it was essential to that defense to introduce all available evidence that it was Williams who, in the heat of the moment or for reasons of his own, decided to execute White.

We agree with the Magistrate Judge that the Superior Court's application of the federal law set forth in Strickland was not objectively unreasonable; Petitioner cannot demonstrate the requisite probability that the outcome of his proceeding would have been different if the jury had heard his brother's testimony regarding the existence a second shooter.  "In considering whether a petitioner suffered prejudice, the effect of counsel's inadequate performance must be evaluated in light of the

---

[2]The Superior Court also noted that, at Petitioner's PCRA hearing, his trial counsel testified that he met and discussed with Kurtis Rainey the alleged confession by Williams and that he investigated it extensively, interviewing a "number of other witnesses prior to trial to in connection with determining that alleged confession, its existence, non-existence, validity." (9/21/01 N.T. at 6.)  Upon failing to locate Williams or to find anyone who could verify the alleged confession, trial counsel elected not to present the testimony fearing that "the bias of Kurtis Rainey would be harmful to his brother Karl given the fact that they were brothers." (9/21/01 N.T. at 7.)  The Superior Court wrote that "it is well established that ineffective assistance of counsel will not be found where there is a reasonable basis for counsel's decision based on a matter of trial strategy."  Commonwealth v. Rainey, No. 2861 EDA 2002, slip op. at 5.

totality of the evidence at trial: a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Rolan v. Vaughn, 445 F.3d 671, 681-82 (3d Cir. 2006) (quotation omitted). Petitioner testified that he saw Williams stand over White and shoot him, and his lawyer argued the existence of a second gunman in his closing statements. (8/9/95 N.T. at 58-61, 100-102.) Even if Kurtis Rainey had been allowed to bolster the second gunman theory through his own testimony, the jury might have rejected his account based upon the conflicting testimony of Boyd. Boyd stated at trial that, although he admittedly did not see the face of the person who shot White in the back, from what heard while lying injured underneath a car, he believed Petitioner was responsible. (8/7/95 N.T. at 96-99, 122-124.) In addition, the Commonwealth called as a witness Kevin White, a disc jockey on the scene of no relation to the Decedent, who testified that the same person, identifiable by his quarter-length black leather jacket, fired all of the shots to White. (8/8/95 N.T. at 21- 25.) Even if the jury had believed that there had been a second shooter, the undisputed fact that Petitioner shot an unarmed man at least two times and the testimony of Dr. Mills that "[t]he cause of death was multiple gunshot wounds to the chest and the abdomen and the back," could have led the jury to conclude that Petitioner committed first degree murder. (8/8/95 N.T. at 73, 127.) Accordingly, we find that the Superior Court's decision to affirm that trial counsel was not ineffective for failing to introduce testimony from Petitioner's brother was not contrary to Supreme Court precedent.

### 2.    Failure to object to and present independent ballistics evidence

Petitioner asserts that his trial counsel was ineffective for failing to object to the testimony of the Commonwealth's ballistics expert, Lieutenant Stephan, that both the .380 caliber and the 9 millimeter bullets that penetrated the Decedent's chest, abdomen, and back could have been fired

11

from the same .380 caliber firearm.  (8/8/95 N.T. at 88-89.)  Petitioner asserts that this evidence was highly conjectural given that its scientific basis was that the expert had fired 9 millimeter bullets from a .380 caliber firearm on a single occasion and that two live 9 millimeter rounds found on the street in the vicinity of the shooting had deformities that might have been indicative of a feed problem.  (8/8/95 N.T. at 89-94, 104-05.)  Petitioner contends that his trial counsel should have challenged Lieutenant Stephan's testimony as inadmissible on the ground that it ran afoul of Pennsylvania's evidentiary prohibition against the admission of expert testimony based on "conjecture or guesswork."  See Commonwealth v. Britcher, 563 A.2d 502, 508 (Pa. Super. Ct. 1989).

Petitioner also contends that his trial counsel was ineffective for failing to undermine the Commonwealth's single gunman theory by presenting countervailing expert testimony.  Petitioner has submitted a detailed report from Gerald Styers, a forensic consultant, which indicates that the firing of 9 millimeter ammunition from a .380 caliber weapon is highly unlikely, and that if such a firing had taken place at the crime scene, there should have also been distortions on the fired cartridge cases, something Lieutenant Stephan never addressed.  (Pet. Obj. Ex. O.)  The report additionally explains that numerous factors may have caused the deformities on the live ammunition observed by Lieutenant Stephan, including dirt in the firearm.  (Id.)  Petitioner asserts that such independent expert information could have been used effectively in cross examination, could have been the subject of affirmative defense testimony, and might even have been used in limine to support the exclusion of Lieutenant Stephan's testimony.  According to Petitioner, the Commonwealth was only able to argue with any authority that Petitioner was the only shooter because of trial counsel's failures.

The Superior Court held, with respect to trial counsel's handling of the ballistics evidence, that there was no reason to disturb the PCRA court's ruling that "trial counsel had a reasonable basis designed to effectuate [Petitioner's] interests under the given circumstances," and therefore, that trial counsel's performance was not outside the range of reasonable professional judgment. Commonwealth v. Rainey, No. 2861 EDA 2002, slip op. at 7.  The Superior Court relied upon trial counsel's testimony at Petitioner's PCRA hearing.  Trial counsel testified, regarding his failure to make objections, as follows:

> "[Lieutenant Stephan's] testimony was basically I wouldn't say worthless but it had no weight to it given the fact that he conceded it could have been fired from the same firearm or could have been fired from two or not, he didn't know.  So as a practical matter I don't know if his testimony really carried much weight. . . . When he testified and made it plain that he could not say one way or another whether [the bullets] were fired from one [1] gun or two [2] guns or more than two [2] guns, as a practical matter objecting to it really would not have served the purpose for a couple of reasons.  Number one is that the jury already heard it.  Two, I didn't want to emphasize it for the jury.  And three is if I could save it for argument and say, listen, he wasn't able to say definitively one way or the other, his testimony has no weight and no significance.

(6/21/01 N.T. at 17, 20.)  Regarding his failure to hire an independent ballistics expert, trial counsel said that he did not need an expert to refute what he thought was simply the inference that the cartridges might have been fired from the same gun.  (6/21/01 N.T. at 8.)  He added that, because no guns had been recovered (Petitioner threw his weapon into the Schuylkill River), he knew that it was impossible for any ballistics expert to connect the bullets recovered from the crime scene to a specific firearm.  (6/21/01 N.T. at 17, 20.)  Based upon trial counsel's testimony, we conclude that the Superior Court was not objectively unreasonable in finding that the PCRA court correctly decided that counsel's ballistics-related decisions were strategically defensible.  See Rolan v.

<u>Vaughn</u>, 445 F.3d 671, 681-82 (3d Cir. 2006) ("<u>Strickland</u> and its progeny make clear that counsel's strategic choices will not be second-guessed by post hoc determinations that a different trial strategy would have fared better." (internal citations omitted)).

Moreover, with respect to trial counsel's failure to obtain a ballistics expert for the defense, we agree with the Magistrate Judge that Petitioner has not established that there is a reasonable probability that the results of his trial would have been different if a defense expert had been made available. The testimony of the defense expert could have indicated that it was more, rather than less, likely that the bullets collected from the crime scene were produced from two separate firearms, but Lieutenant Stephan also allowed for the possibility of two gunmen in his testimony. (8/8/95 N.T. 94-95, 99 ("I am not certain — scientifically certain, . . . that [the fired cartridge cases] came from the same firearm. So I am saying, it is my opinion that it's possible that they did, but I can't be sure.").) Trial counsel emphasized on cross examination that Lieutenant Stephan believed that there could have been two gunmen:

> Q.  But you are not excluding the possibility that they [the fired cartridge cases] could have come from two firearms; is that correct?
> A.  No, I can't. Not scientifically, no.
> Q.  You can't exclude the possibility that the .380s came from a .380 or a 9 millimeter came from a 9 millimeter, can you?
> A.  Correct.

(8/8/95 N.T. at 106.)  In addition, we have already found that the Superior Court was not unreasonable in deciding that even if Petitioner had conclusively established the existence of a second shooter, such evidence might not have influenced the outcome of the trial.  Accordingly, we conclude that the Superior Court's decision, to affirm that trial counsel's failure to object to the testimony of the Commonwealth's ballistics expert and failure to produce a defense ballistics expert

was not ineffective assistance, did not reflect an unreasonable application of Supreme Court precedent.

### 3.    Failure to raise issue of juror recantation of appeal

Petitioner maintains that his appellate counsel was ineffective for failing to raise the issue of juror recantation on direct appeal.  The relevant facts, as set forth by the Superior Court, are as follows:

> the jury submitted its verdict in open court; the jury was polled upon the request of [Petitioner] whereby all members concurred; the verdict was recorded; the jury acknowledged in the affirmative the verdict as recorded; and the jury was discharged to reconvene the following day for sentencing.  The following day, prior to the sentencing hearing beginning, one juror recanted his verdict on his own volition.

Commonwealth v. Rainey, No. 2861 EDA 2002, slip op. at 8.  The Superior Court found that appellate counsel's failure to argue juror recantation did not fall outside the range of reasonable professional assistance because the underlying issue was without merit, and it thereby denied this claim of counsel ineffectiveness under the equivalent of Strickland's performance prong.  Id. at 9.

It is well-settled that an attorney cannot be found ineffective for failing to raise a meritless claim.  See Strickland, 466 U.S. at 691 (1984); United States v. Sanders, 165 F.3d 248, 253 (3rd Cir. 1999).  Petitioner contends that his claim is not meritless because, while the rule in Pennsylvania is that "after a verdict is recorded, and after the jury has been separated and discharged, jurors may not invalidate or impeach a verdict by their testimony," Commonwealth v. Patrick, 206 A.2d 295, 297 (1965), his jury was not discharged at the time of the impeachment, as it had yet to convene for sentencing.  The Superior Court addressed this contention directly and concluded that "even though the same members of the jury were to reconvene for sentencing the following day, they were

effectively discharged from the guilt phase of the trial.  The law is clear, that after a jury verdict is duly recorded and the jury has been discharged, individual jurors may not invalidate or impeach their verdict by their own testimony without claiming outside influence." Commonwealth v. Rainey, No. 2861 EDA 2002, slip op. at 9 (citing Patrick, 206 A.2d at 295; Commonwealth v. Spencer, 393 A.2d 895 (Pa. Super. Ct. 1978); Commonwealth v. Stark, 526 A.2d 383 (Pa. Super. Ct. 1987)).  The Third Circuit instructs that "'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions . . . .'" Warren v. Kyler, 422 F.3d 132, 136 (3d Cir. 2005) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)); cf. Williams v. Price, 343 F.3d 223, 235 (3d Cir. 2003) (noting that enforcement of Pennsylvania's "no impeachment rule" is a matter for Pennsylvania courts).   Accordingly, we assume that the Superior Court's interpretation of Commonwealth law governing juror recantation is correct.  We conclude, therefore, that appellate counsel was not ineffective for failing to raise juror recantation when the juror in question was not permitted to impeach his own verdict.  We further conclude that the Superior Court did not unreasonably apply Supreme Court precedent in affirming the PCRA court's decision in this regard.

      B.    PCRA Court Error

      Petitioner argues that the PCRA court violated his due process and equal protection rights when it denied his request for a ballistics expert at state expense.  Petitioner argues that he was entitled to an expert under the Supreme Court precedent established by Ake v. Oklahoma, 470 U.S. 68 (1985).  Ake addressed the rights of indigent criminal defendants, whose sanity is in issue, to state-sponsored psychiatric assistance in preparing their defenses.  The Supreme Court identified three factors to be used in determining whether the state must fund access to such expertise:

      The first is the private interest that will be affected by the action of

16

> the State.  The second is the governmental interest that will be
> affected if the safeguard is to be provided.  The third is the probable
> value of the additional or substitute procedural safeguards that are
> sought, and the risk of an erroneous deprivation if those safeguards
> are not provided.

Id. at 77.  The Superior Court upheld the PCRA court's decision not to provide Petitioner with a state-sponsored ballistics expert based on its finding that Petitioner offered "no reasonable support as to how a ballistics expert would further [his] argument regarding a second gunman." Commonwealth v. Rainey, No. 2861 EDA 2002, slip op. at 7.  Petitioner contends that the Superior Court's conclusion is unreasonable.  Petitioner asserts that the Commonwealth's use of its own ballistics expert at trial demonstrates that the issue of whether there were one or two gunmen was clearly important and that it was nonsensical for the Superior Court to conclude that countervailing expert testimony would not have contributed to Petitioner's ability to rebut the one gunman theory.

We assume — for argument purposes only — that Ake is applicable outside the context of a psychiatric defense at the trial court level.  See Caldwell v. Mississippi, 472 U.S. 320, 323 n.1 (1985) (stating that Ake did not require the appointment of a criminal investigator, a fingerprint expert, and a ballistics expert, where the defendant offered "little more than undeveloped assertions that the requested assistance would be beneficial," and refusing to reach the question of "what if any showing would have entitled a defendant to assistance of the type here sought").  Although the Superior Court did not explicitly rely on Ake, its rationale for denying Petitioner's request coincides with Ake's third prong, and we will, therefore, give its decision deference.  See Matteo, 171 F.3d at 890.  Petitioner acknowledges that on collateral review he was able to represent to the PCRA court how he thought an independent ballistics expert would have helped his defense.  For example, Petitioner provided the PCRA court with an offer of proof from a forensic consultant stating that

17

determination of whether the .380 and 9 millimeter caliber cartridges were fired from the same firearm required microscopic examination.  (Pet. Obj. Ex. L.)  Petitioner also submitted an offer of proof from the manufacturer of his .380 pistol, which stated that only early models could be forced to function with 9 millimeter ammunition.  (Pet. Obj. Ex. M.)  We find that, with respect to Petitioner's claims on collateral review, a full-length independent report by a state-funded ballistics expert would have added little probative value.  Accordingly, we decide that the Superior Court was not in error in affirming the PCRA court's decision to deny Petitioner the appointment of a ballistics expert.

IV.    CONCLUSION

For the foregoing reasons, we conclude that the instant Petition is without merit. Accordingly, the Petition is denied.  Moreover, as Petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court further concludes that there is no basis for the issuance of a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).  An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KARL RAINEY | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 05-1334 |
| DAVID DIGUGLIELMO, et al. | : | |

**O R D E R**

**AND NOW,** this 6th day of September, 2006, upon careful and independent consideration of the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 and all attendant and responsive briefing, after review of the Report and Recommendation of United States Magistrate Judge Peter B. Scuderi, and in consideration of Petitioner's Objections to the Report and Recommendation and all submissions filed in response thereto, **IT IS HEREBY ORDERED THAT**:

1.      Petitioner's Objections to the Report and Recommendation are **OVERRULED**;

2.      The Report and Recommendation is **APPROVED** and **ADOPTED** to the extent that it is not inconsistent with the accompanying Memorandum;

3.      The Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 is **DENIED**;

4.      A certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) is **DENIED**; and

5.      The Clerk shall **CLOSE** this case statistically.

BY THE COURT:

s/John R. Padova

_____

John R. Padova, J.